**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 2:14–cr–00004-JAD–VCF |
| vs. | **ORDER AND** |
| LANALSIKOV LOWE, | **REPORT & RECOMMENDATION** |
| Defendant. | |

Before the court are Defendant's Motion to Suppress Evidence Obtained on November 25, 2013 in Violation of the Fourth Amendment (#38[1]), Motion to Suppress His Post-Arrest Statement Pursuant to the Fifth and Sixth Amendment (#39), and Motion to Suppress Evidence Obtained from a Cellular Telephone in Violation of the Fourth Amendment (#40). The Government filed responses to these motions (#50, #51, #49), and Defendant replied (#55, #54). For the reasons stated below, Defendant's motions should be denied.

**BACKGROUND**

The background section will be divided into two parts to correspond to the facts implicated in the Defendant's motions: (1) Defendant's arrest on November 25, 2013 and (2) the government's search of Defendant's cell phone.

---

[1] Parenthetical citations refer to the court's docket.

1

## I. Defendant is Arrested on November 25, 2013

On November 25, 2013 at 12:41 AM, the Las Vegas Metropolitan Police Department ("LVMPD") responded to an emergency call from S.M.[2] related to an alleged incident of domestic violence. (#50-1; *see also* Mins. Proceeding #61 (admitting testimony of officers). S.M. had purportedly been dating Defendant for approximately two years. *Id.* S.M., hysterically crying, met Officers C. Forson, D. Foster and M. Grego-Smith outside of her apartment, where she said that Defendant had tried to suffocate her with a pillow and a comforter, and then tried to strangle her with his hands around her neck, while threatening to kill her. *Id.*, #50-2. S.M. alleged that after the attack and over her objections, Defendant forced her into the bedroom and ordered her to have sex with him. (#50-2). Afraid, she complied. (#50-1). Afterwards, Defendant fell asleep on the bed, at which point S.M. snuck outside the apartment to contact the police. *Id.* Police noticed bruising on S.M.'s neck and reddening on her face near her mouth, which were consistent with her statement. (#50-1, Ex. List (#62) at Exs. #1-4).

With S.M.'s consent and using a key S.M. provided, Officers Foster and Forson entered S.M.'s apartment, where the Defendant had been living after his recent release from prison. (#50-2). They found the Defendant passed out in the bedroom. *Id.* Because the visible injuries on S.M. were consistent with her statement, Officer Forson placed the Defendant under arrest for battery by strangulation and domestic violence. (#50-1). Pursuant to a search incident to arrest, officers recovered five grams of cocaine in five baggies from Defendant's pocket. *Id.* In Officer Forson's training and experience, packaging in one gram increments is commonly used for the distribution and sale of

---

[2] Although not expressly provided for in Federal Rule of Criminal Procedure 49.1, the names of crime victims are routinely redacted from court filings to protect the privacy interests of nonparty victims. *See, e.g., United States v. Kaczynski*, 551 F.3d 1120, 1128 (9th Cir. 2009); *United States v. Gavin*, 959 F.2d 788, 792 (9th Cir. 1992); *In re Elec. Submission of Selected Documents*, 441 F.3d 1159 (10th Cir. 2005).

2

narcotics. *Id.* Defendant was transported to the detention center and held in custody pending charges of possession of a controlled substance with intent to sell and battery by strangulation and domestic violence. (#38-4).

As Lowe was being taken to the Clark County Detention Center, a records check of Defendant confirmed that he was a convicted felon. (#50-2, #50-4). During a further interview of S.M., she told officers that Defendant owned firearms, and had recently sold a firearm. (#50-2). She also said that his current employment was the sale of narcotics. *Id.* S.M. signed a consent to search form allowing a search of the apartment. *Id.,* #50-3, Ex. List (#62) at Ex. #10. In the form, S.M. gave consent to search for items related to the investigation of "battery domestic violence/possession of controlled substances," looking for "firearms/narcotics/ narcotics para." (#50-3).[3] During the search, Officer Foster removed a pink vinyl basket from a shelf in the hallway closet, and discovered a firearm[4] hidden inside it. (#50-2, Ex. List (#62) at Exs. #5-6). S.M. purportedly used the basket for hair styling products. *Id.* Foster left the firearm and notified detectives at the Firearms Investigations Unit. *Id.* Detectives Fink and Farrington responded. *Id.* Detective Fink interviewed S.M.. *Id.* Out of an abundance of caution, Detective Farrington obtained a telephonic search warrant, approved by the Honorable Judge Sullivan, which included an authorization for the search for firearms, based on the previous discovery of the firearm and S.M.'s statements to the police officers. *Id.,* #50-4. While executing the search warrant, the detectives recovered the firearm in the hall closet. (#50-2).

---

[3] The signed consent to search form submitted to the court by the Government (#50-3) does not match the form submitted by the Defendant (#38-3). However, at the hearing, the Defendant conceded that the Government's form would be determinative of the outcome for this motion. (Ex. List (#62) at Ex. #10).

[4] The firearm was a Phoenix Arms model Raven, 25 caliber, semi-auto pistol, serial number 3131283. Other impounded property included a firearm magazine with 9-millimeter ammunition and other miscellaneous ammunition. (#50-2; Ex. List (#62) at Ex. #7).

3

## II. Police Search Defendant's Cellular Phone

On February 13, 2014, Lavon Cuyler, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, submitted a sworn affidavit to the court to obtain a warrant to search Lowe's Alcatel One Touch cellular telephone.[5] (#40-1 at 151-52, 168). This cellular phone was a part of Defendant's personal property being held at the Nevada Southern Detention Center. (#40-1 at ¶12). The purported reason for the search was to seize evidence related to violations of a felon in possession of a firearm and/or possession of a controlled substance with intent to distribute. (*Id*. at ¶4). The affidavit provided the following facts to support a finding of probable cause to search the Defendant's cellular phone:

1. The Defendant had previously been convicted of drug trafficking.
2. S.M., Defendant's girlfriend of two years, said that she saw drug paraphernalia in the apartment at least ten times in the past two years.
3. Defendant had cocaine on his person at the time he was arrested.
4. S.M. said that Defendant sold narcotics for a living.
5. S.M. stated that she had overheard Defendant discussing selling cocaine while on his cell phone.
6. Police had already recovered a gun at S.M.'s apartment, to which Defendant had access, and which according to S.M., he took possession of in late 2011.
7. S.M. stated that a few weeks before his arrest, Defendant had sold a handgun which allegedly corresponded to a 9-millimeter magazine also recovered by police.

---

[5] The telephone's serial number is 2YJD01D3JEW9PF1. (#40-1 at 2:6-10).

4

8.     S.M. alleged that on several occasions while on the phone, Defendant threatened to shoot people.

*Id.* at ¶¶7-11.

Based on his own training and experience, in combination with the information related above, Special Agent Cuyler indicated that probable cause existed to believe that evidence related to the sale of narcotics or firearms was contained in the Defendant's cellular phone. (#40-1). A warrant to search the phone was obtained, and the subsequent search of the phone revealed a photograph of a firearm. (#30). This led to a superseding criminal indictment, dated April 8, 2014. *Id.*

Now, Defendant is awaiting trial on charges of two counts of Felon in Possession of a Firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of Possession of a Controlled Substance with Intent to Distribute (Cocaine), 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (#30). Defendant asserts that the in-home arrest, as well as the subsequent seizure of the firearm and the controlled substance (cocaine), violated the Fourth Amendment of the United States Constitution, and asks the court to suppress the evidence obtained as a result of the search. (#38). He also alleges that the Government obtained statements in violation of his rights under the Fifth and Sixth Amendments, and requests that the court suppress these statements. (#39). Finally, Defendant asserts that the warrant to search his cellular phone was obtained in violation of the Fourth Amendment, and therefore requests the court to suppress any evidence seized from that phone, as well as any observations related to it. (#40).

An evidentiary hearing was held on August 4, 2014 regarding the Defendant's motions to suppress. (#61). At this hearing, the Court heard testimony from Officer Forson, Officer Foster, and Detective Farrington, regarding the events which occurred on November 25, 2013. This testimony was consistent with the arrest reports. As the Government indicated that it does not intend to introduce the Defendant's post-arrest statement into evidence, the Court recommends that Defendant's Motion to

5

Suppress Post-Arrest Statement Pursuant to the Fifth and Sixth Amendment (#39) be denied as moot without prejudice for the Defendant to challenge the use of the statement in the future, should the Government later desire to admit it into evidence. (#61).  Additionally, the Court granted the Government's Motions to Strike (#48 and #58), to which the Defendant raised no objection. (#61).

**DISCUSSION**

The Defendant moves to suppress (1) evidence obtained on November 25, 2013 and (2) evidence obtained from a cellular telephone.  Both motions are addressed below.

### I. Whether Evidence of Drugs and a Firearm Should Be Suppressed

The first issue raised by the Defendant is whether the narcotics and firearm that were seized by Officers Forson and Foster should be suppressed under the Fourth Amendment.  Defendant argues that the evidence should be suppressed for five reasons: (1) the arrest and search were unlawful because they were done without a warrant; (2) the search for the firearm went beyond the physical area of a search incident to arrest; (3) the discovery of the firearm went beyond the scope of a protective sweep; (4) the firearm was not in plain view; and (5) the officers' search of the hallway closet lacked probable cause and went beyond the scope of the consent given.

The Court disagrees.  The Fourth Amendment's keystone is reasonableness: searches and seizures must be reasonable under the circumstances. *Carroll v. United States*, 267 U.S. 132, 147 (1925).  Here, each step that the government took in response to S.M.'s call, and in furtherance of their investigation into Defendant, was reasonable.  As discussed in more detail below, the arrest report clearly states that the subject firearm was discovered in a pink vinyl basket in the hall closet during a search of the apartment to which S.M. consented.  It was not found during a search incident to arrest, during a protective sweep, or because it was in plain view.  Therefore, the Court's analysis regarding the firearm will focus on S.M.'s consent.  The Court's analysis proceeds in three steps: (1) Defendant's arrest was

6

reasonable; (2) the government's search of Defendant incident to arrest was reasonable; and (3) the government's search of the home was reasonable.

Therefore, the Court recommends denying Defendant's motions.

**A. The Defendant's Arrest Was Reasonable.**

The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment was primarily intended to protect against physical entry of the home. *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.,* 407 U.S. 297, 313 (1972). "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980). Therefore even with probable cause, "searches and seizures inside a home without a warrant are presumptively unreasonable," unless there is a showing of (1) exigent circumstances or (2) voluntary consent.[6] *Id.* at 586-88 (1980); *see also Steagald v. United States*, 451 U.S. 204, 212 (1981).

Where exigent circumstances are present, with probable cause, police may enter a home without a warrant, because the "needs of law enforcement [are] so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Riley v. California*, 13-132, 2014 WL 2864483 (U.S. June 25, 2014). Exigent circumstances are present where there is hot pursuit of a felon, a need to

---

[6] In *Payton*, the Court specified, "[W]e are dealing with entries into homes made without the consent of any occupant." *Id.* at 583. By this statement "[t]he Court implicitly held that warrantless arrests inside the home were permissible when police entry into the home was consensual." *United States v. Vaneaton*, 49 F.3d 1423, 1428 n.1 (9th Cir. 1995) (Tashima, J., dissenting).

protect the safety of a person inside a residence, or a need to prevent the immediate destruction of evidence.[7]

A search is permissible without a warrant or probable cause if there is voluntary consent to search given by a person with authority to give consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *see also United States v. Matlock*, 415 U.S. 164, 170-71 (1974) (finding that one occupant who possesses common authority over premises to be inspected can give consent to search such premises). Baring exigent circumstances, one occupant cannot give consent to search a residence while another occupant is present and expressly refusing. *Georgia v. Randolph*, 547 U.S. 103, 115-20 (2006). However, where an occupant who is present fails to object to a search, the consent of "a third party who possesses common authority over the premises" is sufficient. *See Illinois v. Rodriguez*, 497 U.S. 177, 180-81 (1990) (finding that consent was valid where a co-occupant, being asleep in the residence, did not refuse consent).

Here, the officer's entry into the home was reasonable because S.M. gave informed consent and the officers did not exceed the scope of that consent when they entered the home to arrest.[8] Defendant's girlfriend, S.M., gave the police her key and voluntary consent to enter the apartment. As a legal tenant, she had authority to give consent, and Defendant, although present, did not object to such entry. Therefore, police legally entered the apartment in question.

---

[7] *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294 (1967) (finding that searches done in a home without a warrant in hot pursuit of a felon are reasonable); *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006) (holding that searches done in a home without a warrant are lawful if there is an objectively reasonable basis for believing that an occupant is injured or is in immediate danger); *Kentucky v. King*, 131 S. Ct. 1949 (2011) (finding that searches done in a home without a warrant are permissible to prevent the imminent destruction of evidence).

[8] Exigent circumstances are not present here. Police were not in hot pursuit of the Defendant, as his alleged crime had occurred in the apartment. Nor did police need to protect the victim or another person, as Defendant was presumably alone in the apartment and passed out at the time of arrest. Finally, the police do not claim the need to prevent the immediate destruction of evidence.

A felony arrest in a public place can be made on probable cause without a warrant, even where there is adequate opportunity to procure a warrant. *United States v. Watson,* 423 U.S. 411, 417, 421, 423 (1976). Probable cause exists if the facts are such that a prudent man would reasonably believe that a felony had been committed. *Henry v. United States*, 361 U.S. 98, 102 (1959). Incident to a lawful arrest, police may conduct a warrantless search of the area in possession and control of the person under arrest. *See United States v. Robinson*, 414 U.S. 218 (1973). However, "if an arrest without a warrant is to support an incidental search, it must be made with probable cause." *Henry v. United States*, 361 U.S. 98, 102 (1959) (citing *Carroll v. United States*, 267 U.S. at 155-56 (1925)).

An arrest in a home includes both the invasion of privacy of a person, as well as an invasion of the privacy of the home. *Payton*, 445 U.S. at 588-89, quoting *United States v. Reed*, 572 F.2d 412, 423 (2d Cir. 1978), *cert. denied*, *sub nom. Goldsmith v. United States*, 439 U.S. 913 (1978). However, "any differences in the intrusiveness of entries to search and entries to arrest are merely ones of degree rather than kind. The two intrusions share this fundamental characteristic: the breach of the entrance to an individual's home." *Payton*, 445 U.S. at 589. Although *Payton* did not directly address this issue, several circuit courts have found that consent to enter, given by a third person with sufficient authority to give consent (such as live-in girlfriends),[9] justified a warrantless arrest. *See United States v. Shigemura,* 682 F.2d 699, 706 (8th Cir.1982), *cert. denied,* 459 U.S. 1111 (1983); *United States v. Ruiz-Altschiller,* 694 F.2d 1104, 1106-07 (8th Cir.1982), *cert. denied,* 462 U.S. 1134 (1983), *United States v. Cruz-Mendez,* 467 F.3d 1260 (10th Cir.2006).

Warrantless entry incident to arrest includes the invasion of both the privacy of a person and the privacy of the home. As outlined above, third party consent is sufficient to overcome the issue of the privacy of the home. Therefore, what remains is to consider the privacy of the person. Under federal

---

[9] *See United States v. Stokes*, 631 F.3d 802 (6th Cir.2011); *United States v. Briley*, 726 F.2d 1301 (8th Cir.1984).

common law, probable cause is sufficient to make a felony arrest in a public place because the state interest would be strong enough to overcome the privacy interest of a person. When making an arrest in a home, the only additional privacy interest (compared with a public arrest) is that of the privacy of a home, which is overcome if there is third party consent to enter. Therefore, probable cause that a felony has occurred combined with consent to enter is sufficient to justify a warrantless arrest in a home.

Here, Defendant's arrest was reasonable. The officers had probable cause to suspect that the Defendant had committed a crime of battery by strangulation based on S.M.'s statements, which were consistent with the visible bruising on her neck and reddening near her mouth, as well as her hysterical crying when they arrived on the scene. This evidence reaches a threshold of probable cause that a felony had occurred, which, in combination with S.M.'s consent to enter, is sufficient for the police to arrest the Defendant in his home. (*See Henry* 361 U.S. at 102, defining probable cause).

**B. The Government's Search Incident to Arrest Was Reasonable.**

Following Defendant's arrest, the Officer's conducted a search incident to arrest. It is well settled that searches incident to arrest are lawful under the Fourth Amendment and that evidence obtained in connection with a lawful arrest should not be suppressed. *United States v. Robinson,* 414 U.S. 218 (1973); *Chimel v. California,* 395 U.S. 752 (1969).

Here, the government lawfully arrested Defendant (see supra, §I.A.) and discovered packaged cocaine on his person during a search incident to arrest.[10] Therefore, the Court should not suppress the evidence (i.e., the packaged cocaine) found in Defendant's pocket.

---

[10] Although Defendant contests the validity of the arrest, he does not independently contest the validity of the search incident to arrest.

10

**C. The Government's Search of the Home Was Reasonable.**

Following the government's search incident to arrest of Defendant, the government searched S.M. and Defendant's residence for firearms and drugs. For the reasons stated below, the Court finds that this search was lawful under the Fourth Amendment.

A search is permissible without probable cause if voluntary consent to search is given by a person with authority to give consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Consent searches should not exceed the limits of the consent given, either in duration or physical scope. *United States v. Rubio*, 727 F.2d 786, 796 (9th Cir. 1983). The standard for consent is "that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Under *United States v. Ross*, 456 U.S. 798, 820 (1982), the government may search anywhere—that is, in any space, item, or container—which the government reasonably believes may contain contraband.

Here, the government's search of the home was lawful because it obtained a voluntary consent-to-search form from S.M.. The scope of the consent-to-search form included "firearms, narcotics, and narcotics paraphernalia." Consequently, the Fourth Amendment authorized the government to search any item in the home that could contain narcotics or firearms. A reasonable person would have understood that consent to search for guns or drugs would include a search of small containers throughout the apartment. This includes the hallway closet and the basket in the closet. As the discovery of a gun in a basket in the closet is directly within the scope of the consent given on that form, the gun should not be suppressed.[11]

---

[11] Since the Court finds that the search did not violate the Constitutional rights of the Defendant, it is unnecessary for the Court to address the question of whether the inevitable discovery exception to the exclusionary rule would apply.

11

Defendant argues that the search of the basket in the closet was invalid because the government lacked probable cause, and according to *Arizona v. Hicks*, 480 U.S. 321, 322 (1987), police may not move an item to discern its evidentiary value without probable cause. However, this argument is unpersuasive because probable cause is not necessary if consent to search exists. Therefore, since S.M. gave voluntary consent to search for drugs and firearms, and the search of the basket in the hall closet was within the scope of that consent, the Court recommends denying the Defendant's motion to suppress.

**II. Whether Information Obtained from Defendant's Cell Phone Should be Suppressed**

The second issue raised by the Defendant is whether the evidence obtained from his cellular telephone should be suppressed. (#40). Defendant's motion and reply raise two questions: (1) whether the affidavit in support of the search warrant lacked probable cause and (2) whether the government's removal of the back cover of Defendant's cell phone prior to obtaining a search warrant was lawful under the Fourth amendment. The Government argues that the motion should be denied because the affidavit contained sufficient facts to support probable cause, and in any case, it is objectively reasonable for law enforcement to rely on a search warrant issued by a neutral magistrate judge. (#49). For the reasons stated below, the Court should deny Defendant's motion.

**A. It Was Reasonable for the Government to Remove the Back Cover of Defendant's Cell Phone.**

The first question Defendant's motion presents is whether the government's search of the Defendant's cell phone was lawful under the Fourth Amendment. The government searched Defendant's cell phone when Defendant was in custody and the cell phone was in the detention facility's inventory. Defendant argues that the search was unlawful because the police opened the back cover of the phone and removed its battery (and possibly its memory card) prior to the execution of the search warrant. The court disagrees for two reasons.

12

First, it is well settled that the government may search a federal prisoner's possessions held by the government in inventory. It is reasonable for an officer to conduct an inventory search of the personal effects of an arrestee incident to booking and jailing a suspect. *Illinois v. Lafayette*, 462 U.S. 640 (1983). The justification for such searches rests on reasonable and orderly police administration (such as protection of the arrestee's property from theft), and as such, probable cause is unnecessary. *Lafayette*, 462 U.S. at 643, 646.[12] An officer is entitled to inspect a legally seized item, even if inspection is not required to protect officer safety, to preserve evidence, or whether a less intrusive means exists. *Id*; *United States v. Mines*, 883 F.2d 801, 804 (9th Cir. 1989) (holding that officers could examine a machine gun for serial numbers once they lawfully possessed it).[13]

Here, the police search of the physical components of Defendant's phone before obtaining a search warrant was reasonable. The phone was part of the Defendant's property associated with his arrest, and therefore, it may reasonably be inspected by police. Looking at a cell phone's serial number is like looking at a car's VIN number or a firearm's serial number, both of which are reasonable under the Fourth Amendment. The officer's act of opening the back of the phone and removing the battery to obtain the serial number of the phone for inventory purposes was reasonable.

Second, the cell phone's serial number is not the type of "sensitive personal information" requiring a search warrant under *Riley v. California*, 134 S. Ct. 2473 (2014). In *Riley*, the Court found that a warrantless search of data on cell phones is unreasonable because such data contains "sensitive personal information" which triggers greater privacy interests. *Id.* at 2485, 2490. However, officers are

---

[12] However, an inventory search is unreasonable if it is a mere pretense for criminal investigation. *United States v. Scott*, 665 F.2d 874, 876 (9th Cir. 1981). Here, there was no showing of pretense, and even if a pretense existed this would only support suppressing the serial number.

[13] In *Hicks*, 480 U.S. at 326, the Court stated that police action in moving stereo equipment to locate serial numbers was an invalid search because police lacked probable cause, which is "required to invoke the plain view doctrine." However, this case concerns an inventory search, which, unlike plain view doctrine, does not require probable cause analysis. *Lafayette*, 462 U.S. at 643, 646.

still permitted to examine "physical aspects of a phone" for certain purposes. *Id*. The Court finds that this includes the serial number. In this case, and under these circumstances, Defendant failed to proffer sufficient facts to demonstrate that Defendant has a reasonable expectation of privacy in his cell phone's serial number. While the digital data contained in a cell phone is protected against a warrantless search, the battery of a cell phone, its serial number, and the outside of its memory card do not contain sensitive personal information which would necessitate court protection. Therefore, it is recommended that the Court deny Defendant's motion to suppress evidence obtained from his cellular phone.

### B. The Affidavit in Support of the Search Warrant Established Probable Cause.

The second question Defendant's motion presents is whether the affidavit in support of the search warrant lacked probable cause. Defendant argues that probable cause did not exist for two reasons: (1) the information contained in the affidavit was stale, and (2) the affidavit lacked a sufficient nexus between the criminal conduct and the phone. The Court disagrees.

Sufficient facts exist in the affidavit to support a reasonable belief that the warrant was based on probable cause to search the phone for evidence related to both drug trafficking and firearms.[14] The Defendant had previously been convicted of drug trafficking. S.M., Defendant's girlfriend of two years, said that she saw drug paraphernalia in the apartment at least ten times in the past two years. Defendant had cocaine on his person at the time he was arrested, and S.M. said that Defendant sold narcotics for a living. S.M. further stated that she had overheard Defendant discussing selling cocaine while on his cell phone. Regarding firearms, police had already recovered a gun at S.M.'s apartment, to which Defendant had access, and which according to S.M., he "took possession" of in late 2011. S.M. stated that a few weeks before his arrest, Defendant had sold the handgun which corresponded to a 9-millimeter

---

[14] In his motion, the Defendant does not question the truth of the statements contained in the affidavit, nor the detachment and neutrality of the judge who issued the warrant.

14

magazine also recovered by police.  S.M. also stated that on several occasions while on the phone, Defendant threatened to shoot people.  Based on this evidence and his own training and expertise, Lavon Cuyler, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, submitted a sworn affidavit that there was probable cause to believe the evidence related to the sale of narcotics or firearms was contained in the Defendant's cellular phone.

Even if the warrant lacked probable cause, evidence obtained from a search conducted in objectively reasonable reliance on a facially valid warrant obtained from a "detached and neutral magistrate" judge should not be suppressed, even if the search warrant is subsequently found to be invalid.  *United States v. Leon*, 468 U.S. 897, 918 (1984).  In *Leon*, the Court said that a magistrate judge's rulings should be given "great deference" because "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause." *Id.* at 914.   Here, an officer could have reasonably believed that the warrant was based on probable cause, and therefore, even if the information in the affidavit is stale or lacked a nexus with the cellular phone, the evidence in the phone does not fall under the exclusionary rule.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that the Government's Motions to Strike (#48, #58) are GRANTED.

IT IS SO ORDERED.

## RECOMMENDATIONS

IT IS RECOMMENDED that Defendant Lanalsikov Lowe's Motion to Suppress Evidence Obtained on November 25, 2013 (#38) be DENIED.

IT IS FURTHER RECOMMENDED that Defendant Lanalsikov Lowe's Motion to Suppress His Post-Arrest Statement Pursuant to the Fifth and Sixth Amendments (#39) be DENIED as moot, with leave to re-file if the Government seeks to introduce Defendant's statement into evidence.

IT IS FURTHER RECOMMENDED that Defendant Lanalsikov Lowe's Motion to Suppress Evidence Obtained from a Cellular Telephone in Violation of the Fourth Amendment (#40) be DENIED.

IT IS SO RECOMMENDED.

DATED this 11th day of August, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE