# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>LANALSIKOV LOWE,<br><br>Defendant. | Case No.: 2:14-cr-00004-JAD-VCF<br><br>**Order Adopting Report and Recommendation [Doc. 63] and Denying Defendant's Motion to Suppress Evidence Obtained on November 25, 2013 [Doc. 38], Defendant's Motion to Suppress His Post-Arrest Statement [Doc. 39], and Defendant's Motion to Suppress Evidence Obtained From a Cellular Telephone  [Doc. 40]** |

Defendant Lanalsikov Lowe is charged with possession of cocaine with intent to distribute and two counts of being a felon in possession of a firearm. Doc. 30. He moves to suppress the cocaine recovered from his pocket during a search incident to arrest, a firearm recovered from a consensual search of the apartment he was sharing with his girlfriend, post-arrest statements, and evidence obtained from the search of his cell phone conducted pursuant to a search warrant while he was in pre-trial custody. Docs. 38, 39, 40. Magistrate Judge Ferenbach conducted an evidentiary hearing[1] on these motions and now recommends that I deny the motion to suppress Lowe's post-arrest statements as moot because the government does not intend to introduce them, and deny the other suppression motions because Lowe's arrest and the subsequent searches were constitutionally sound. Doc. 63. Lowe objects. Doc. 72. After a de novo review, I adopt Magistrate Judge Ferenbach's findings, accept his recommendations, and deny Lowe's motions to suppress. Docs. 38, 39, 40, 63.

---

[1] Docs. 61, 62, 78.

1

**Background**

**A.     Lowe's arrest and the search of his pockets**

Early in the morning on November 25, 2013, the Las Vegas Metropolitan Police Department responded to a domestic violence call. S.M. reported that defendant Lanalsikov Lowe, whom she had been dating for two years,[2] had tried to suffocate her with a pillow and a comforter.[3] Every time she tried to get away, she told Officer Forson, Lowe punched her in the ribs, telling her, among other things, "This is the end bitch," and "Say goodbye to life."[4] She reported that Lowe forced her into the bedroom and ordered her to have sex with him;[5] Lowe eventually fell asleep, and S.M. snuck out of the apartment to contact the police.[6] When the officers arrived, they observed and photographed bruising on S.M.'s neck and reddening on her face.[7]

S.M. gave the officers a key and permission to enter her apartment, where Lowe had been living for about a month after being released from prison.[8] Officers located Lowe passed out in the bedroom and arrested him for battery by strangulation and domestic violence, based on S.M.'s visible injuries and her explanation of their origins.[9] In a search immediately incident to Lowe's arrest, officers recovered from Lowe's pocket five grams of cocaine distributed evenly among five separate baggies.[10]

**B.     The search of the apartment**

Lowe was taken to the Clark County Detention Center ("CCDC"), and a records check

---

[2] Doc. 50-1; *see also* Doc. 61 (admitting testimony of officers).

[3] Doc. 50-1; Doc 50-2.

[4] Doc. 50-1.

[5] She later told Officer Farrington, in a more in-depth interview, that this had happened several times before and as recently as the previous week. Doc. 50-2.

[6] Doc. 50-1.

[7] *Id.*; Doc. 64 at Exhibits 1-4.

[8] Doc. 50-2.

[9] Doc. 50-1.

[10] Doc. 50-1

2

confirmed that he was a convicted felon.[11]  In another interview with police, S.M. reported that Lowe owned firearms and had recently sold one,[12] Lowe's current job was selling drugs,[13] she did not own any firearms and any firearm found in her apartment would belong to Lowe,[14] and she has seen Lowe sell firearms in the past.[15]  S.M., who was the lessee on the apartment lease, then signed a consent form authorizing the officers to search her apartment for "firearms/narcotics/narcotics para[phrenalia]" related to the investigation of "battery domestic violence/possession of controlled substance."[16]

During the ensuing search, Officer Foster removed a pink vinyl basket from a shelf in the hallway closet; inside, he discovered a firearm.[17]  Aware that Lowe was a felon, Foster left the firearm where it was and immediately notified detectives in the Firearms Investigation Unit, who obtained a telephonic warrant to seize it.[18]  While executing the warrant, the detectives recovered the firearm: a Phoenix Arms model Raven, 25 caliber, semi-automatic pistol[19]; a firearm magazine loaded with several rounds of 9-millimeter ammunition; and numerous shotgun shells.[20]

---

[11] Doc. 50-2, Doc. 50-4.

[12] Doc. 50-2

[13] Doc. 50-2.

[14] Doc. 50-3. S.M. later retracted this statement, explaining that she had originally said the firearm was not hers based on advice her mother gave her. She went on to say, however, that she had not placed the firearm in the pink vinyl basket where it had been found by the police and that (1) the only other person who had access to her property was Lowe, (2) Lowe "took possession" of the firearm sometime in late 2011, and (3) Lowe had told her that the firearm now belonged to him. Doc 40-1 at ¶9.

[15] Doc. 40-1 at ¶9.

[16] Doc. 50-3.

[17] Doc. 50-2.  Although records of the search refer to this container as a pink "bag," *see* Docs. 40-1 at 4; 50-2 at 3, the photo depicts an open-top beach-type tote bag with a basket shape. Doc. 62 at 7.  Testimony from the searching officer at the evidentiary hearing before the Magistrate Judge further confirmed "It's like a basket."  Doc. 78 at 53-54, 64-65.

[18] *Id.*; Doc. 50-4.

[19] Doc. 50-2.

[20] *Id.*

3

**C.     The search of Lowe's cell phone**

On February 13, 2014, while Lowe was being held at the Nevada Southern Detention Center and his cell phone was being stored in the center's inventory room with his personal effects, the phone's back cover and battery were removed, and its serial number was obtained.[21] Special Agent Lavon Cuyler with the Bureau of Alcohol, Tobacco, Firearms, and Explosives then obtained a warrant to search the electronic contents of the phone.[22] The search produced a photograph of a firearm.[23]

**D.     Lowe's motions to suppress**

Lowe moves to suppress the narcotics and firearm seized on November 25, 2013, arguing that the arrest and search incident to that arrest were both unlawful because they were warrantless; the firearm was discovered outside the physical area of a search incident to arrest or a protective sweep; the firearm was not in plain view; and the officers lacked probable cause to search the hallway closet where the gun was found and their search exceeded the scope of S.M.'s consent.[24] He further contends that the evidence obtained from his cell phone should be suppressed because the phone search lacked probable cause[25] and "the good faith exception to the exclusionary rule does not rescue a warrant that lacks probable cause."[26]

Magistrate Judge Ferenbach conducted a two-hour evidentiary hearing on Lowe's motions on August 4, 2014.[27] He heard testimony from Officers Forson, Foster, and Farrington, and arguments from both the government and Lowe's attorneys.[28] In his resulting 16-page Report and

---

[21] Doc. 63 at 12-13.

[22] Doc. 40-1.

[23] Doc. 30; Doc. 63 at 5.

[24] Doc. 38 at 4-9.

[25] Doc. 40 at 4-7.

[26] Doc. 40 at 7.

[27] Doc. 61.

[28] *Id.*

4

Recommendation,[29] Magistrate Judge Ferenbach found that Lowe's arrest was reasonable because the officers had "probable cause that [Lowe] had committed a crime of battery by strangulation based on S.M.'s statements, which were consistent with the visible bruising on her neck and reddening near her mouth, as well as her hysterical crying when they arrived."[30] He then found that the search incident to arrest was reasonable because the officers lawfully arrested Lowe and "it is well-settled that searches incident to arrest are lawful under the Fourth Amendment."[31] And he found that the search of S.M.'s apartment was reasonable because "S.M. gave voluntary consent to search for drugs and firearms, and the search of the [pink vinyl basket] in the hall closet was within the scope of that consent."[32] He recommends that Lowe's motion to suppress evidence from the search incident to arrest and the subsequent search of the apartment be denied.[33]

On the question of whether to suppress evidence obtained from Lowe's cell phone, Magistrate Judge Ferenbach found that it was reasonable for the government to remove the back cover of Lowe's cell phone without a warrant because a cell phone's serial number is "not the type of 'sensitive personal information' requiring a search warrant under *Riley v. California*, 134 S. Ct. 2473 (2014)'"[34]; instead it is part of the "'physical aspects of a phone'" that officers are still permitted to inspect without fear of triggering greater privacy interests.[35] He also found that probable cause was demonstrated by the affidavit in support of the search warrant the officers obtained before the search of the phone's contents; even if probable cause was lacking, the officers reasonably relied on the warrant because it was obtained from a "'detached and neutral

---

[29] Doc. 63.

[30] *Id.* at 10.

[31] *Id.*

[32] *Id.*

[33] Doc. 38.

[34] *Id.*

[35] *Id.* at 13-14 (quoting *Riley*, 134 S. Ct. at 2485, 2490).

5

magistrate.'"[36]  Thus, he recommends that I also deny Lowe's motion to suppress the evidence obtained from the cell-phone search.[37]

Lowe objects to Judge Ferenbach's recommendations.[38]  He continues to insist that the search incident to arrest was unlawful because it does not fall within one of the three categories of arrests that the Supreme Court has excepted from the warrant requirement.[39]  He disputes the Magistrate Judge's ability to determine the scope of S.M.'s consent for the apartment search because neither S.M. nor any officer who witnessed her sign the consent form testified at the evidentiary hearing.[40]  And he argues that the information used to secure the warrant for the search of his phone was too "'stale'"[41] and that the warrant "did not establish a sufficient nexus between the criminal conduct alleged and the place where the items were supposed to be found."[42]  He adds that the "search and/or seizure of the cellular telephone [was] outside of the timeline of the search warrant execution," because Special Agent Cuyler had possession of the phone before obtaining the warrant.[43]  I address each objection with a de novo review.

## Discussion

**A.   No warrant was necessary for Lowe's arrest because S.M. gave voluntary consent to enter the apartment.**

Lowe's first objection to the R&R is that the search of his pockets incident to arrest was unlawful because his warrantless arrest inside his home was itself unlawful.  He contends that there are just three narrow circumstances in which warrantless arrests are permitted: (1) when the offense

---

[36] *Id*. at 14-15 (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)).

[37] Doc. 40.

[38] Doc. 72.

[39] Doc 72 at 3-4.

[40] *Id*. at 4-5.

[41] *Id*. at 5 (quoting *Durham v. United States*, 403 F.2d 190 (9th Cir. 1968)).

[42] *Id*. at 6.

[43] *Id*. at 7.

6

1  is committed in the officer's presence, (2) when the officer has probable cause and the arrest occurs
2  in a public place, or (3) when the officer has probable cause[44] and exigent circumstances exist. Doc.
3  72 at 3. As Lowe's arrest fits within none of these exceptions, he contends that his arrest and the
4  search incident to that arrest were unlawful. *Id.*

5  Lowe leaves out one other critical exception to the general rule that a warrantless in-home
6  arrest is constitutionally unreasonable: consent.[45] As the Ninth Circuit explained in *Lopez-*
7  *Rodriguez v. Mukasey*, "The presumption of unconstitutionality that accompanies 'the warrantless
8  entry into a home to conduct a search or make an arrest' may be overcome only by showing 'consent
9  or exigent circumstances.'"[46] Thus, "police officers must either obtain a warrant ***or consent*** to enter
10 before arresting a person inside a home . . . ."[47] As the Supreme Court in *Georgia v. Randolph* made
11 clear, "the Fourth Amendment recognizes a valid warrantless entry and search of premises when
12 police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share,
13 authority over the area in common with a co-occupant who later objects to the use of evidence so
14 obtained."[48] Lowe does not dispute that S.M. gave officers free and voluntary consent—and the
15 key— to enter their shared apartment and that she had the authority to do so.[49] The Magistrate
16 Judge's finding that Lowe's arrest was reasonable because S.M. gave informed consent and the
17 scope of that consent was not exceeded when police entered the home to arrest Lowe was therefore
18 legally sound. Lowe's objection that his arrest and the search of his pockets incident to that arrest

---

[44] Lowe does not deny that officers had probable cause to make the arrest. Doc. 72.

[45] *Payton v. New York*, 445 U.S. 573, 586-88. (1980). In *Payton*, the Court specified, "[W]e are dealing with entries into homes made without the consent of any occupant." *Id*. at 583. By this statement, "[t]he Court implicitly held that warrantless arrests inside the home were permissible when police entry into the home was consensual." *United States v. Vaneaton*, 49 F.3d 1423, 1428 n.1 (9th Cir. 1995) (Tashima, J. dissenting).

[46] *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1016 (9th Cir. 2008) (quoting *Steagald v. United States,* 451 U.S. 204, 211 (1981)).

[47] *United States v. Struckman*, 603 F.3d 731, 747 (9th Cir. 2010) (emphasis added).

[48] 547 U.S. 103, 106 (2006); *see also Fernandez v. California*, 134 S. Ct. 1126, 1131 (Feb. 25, 2014) (reiterating that co-occupant may give effective consent for entry into shared home).

[49] *See* Doc. 72.

7

does not satisfy an exception to the prohibition on warrantless, in-home arrests is overruled.

**B.     The Magistrate Judge correctly found that the basket containing the gun was within the scope of S.M.'s consent**.

Lowe next objects to the Magistrate Judge's finding that the search of the basket in which the firearm was found was reasonable. Lowe argues that, without testimony by S.M. or the officers who obtained her consent, the court could not have determined that, in consenting to the search, S.M. intended the search for guns and drugs to include "a search of small containers throughout the apartment."[50]

But Magistrate Judge Ferenbach did not need to determine S.M.'s subjective intent. "[T]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"[51] "The stated object of the search also determines which containers an officer may inspect without exceeding the scope of a consent to search."[52] It is "objectively reasonable" for law enforcement to believe that a consent to search a specific area authorizes the opening of even "a closed container found within [the area] that might reasonably hold the object of the search."[53] Courts must consider "the totality of the circumstances to determine whether a search exceeds the scope of consent."[54]

The consent form that S.M. signed specifically defines the scope of the search to include

---

[50] Doc. 72 at 4.

[51] *Florida v. Jimeno,* 500 U.S. at 251; *United States v. Lopez-Cruz*, 730 F.3d 803, 810 (9th Cir. 2013) (citing *Jimeno*, 500 U.S. at 251 for the proposition that "in a scope of consent case, we review for what 'the typical reasonable person would have understood' the parties to have said to each other").

[52] *United States v. Whitehorn*, 123 F. App'x 752, 754 (9th Cir. 2005) (citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *United States v. Gutierrez–Mederos,* 965 F.2d 800, 803 (9th Cir. 1992)).

[53] *Id.* (citing *Florida v. Jimeno*, 500 U.S. at 249).

[54] *United States v. Mines,* 883 F.2d 801, 803 (9th Cir. 1989); *United States v. Huffhines*, 967 F.2d 314, 319 (9th Cir. 1992).

8

"firearms/narcotics/narcotics para[phernalia]"[55] and, thus, any containers in which such items would reasonably fit. The pink vinyl basket that S.M. purportedly used for hair-styling products was precisely such an area. When Officer Foster searched the hallway closet and found a Phoenix Arms model Raven, 25 caliber, semi-automatic pistol inside the basket, he was searching for exactly what S.M.'s consent form authorized him to search for; a typical person would have reasonably understood the search that S.M. authorized to cover the hall closet and her basket.[56] Moreover, this basket is likely not the type of enclosed container in which the Ninth Circuit would recognize an expectation of privacy.[57] I therefore find that the typical reasonable person would have concluded that the search that S.M. expressly consented to would objectively include the pink basket in the hallway closet. Under the totality of these circumstances, the apartment search fell within the scope of S.M.'s voluntary consent. Lowe's objection is overruled.

**C.    The Magistrate Judge properly found the cell-phone search warrant supported by probable cause.**

Lowe's final objections concern the search of his cell phone. Lowe argues that the information on which the cell-phone search warrant was issued was "too dated to support probable cause" and did not sufficiently connect the alleged criminal conduct to the phone.[58] And he insinuates some error in the fact that the government was already in possession of the phone before the warrant was issued.[59]

After a de novo review of the record, I agree with Magistrate Judge Ferenbach that the

---

[55] Doc. 50-3.

[56] The Magistrate Judge's citation to *United States v. Ross*, 456 U.S. 798, 821 (1982), was also salient because the Court observed in *Ross*, "When a legitimate search is under way, and when its purposes and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand."

[57] *United States v. Sealey*, 830 F.3d 1028, 1031 (9th Cir. 1987), *disapproved on other grounds in United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997).

[58] Doc. 72 at 5-6.

[59] *Id.* at 7.

9

1 information on which the cell phone warrant was obtained supported the issuing magistrate's finding
2 of probable cause. Police had found five baggies of cocaine in Lowe's pocket upon his arrest; S.M.,
3 Lowe's girlfriend of two years, said that she had seen drug paraphernalia in the apartment at least 10
4 times in the course of their relationship, that she had overheard him discussing selling cocaine on his
5 cell phone, and that Lowe's job at the time of his arrest was as a drug dealer; police had recovered a
6 gun in the apartment Lowe shared with S.M.; and S.M. told police Lowe had taken possession of
7 that gun from her back in 2011 and had recently sold another handgun that corresponded to a 9-
8 millimeter magazine discovered during the apartment search.[60] These facts established probable
9 cause that the phone would contain evidence related to drug trafficking and firearms.

10 Although the cell phone search was conducted until six weeks after Lowe's arrest, the
11 passage of time did not cause the information to become stale. Lowe was in custody, and his phone
12 was being held as part of his personal effects.[61] Thus, unlike in *Durham v. United States*, 403 F.2d
13 190 (9th Cir. 1968), *United States v. Button*, 653 F.2d 319 (8th Cir. 1981), and *United States v.*
14 *Wagner*, 989 F.2d 69 (2d Cir. 1993), where the courts found delays in obtaining warrants made it
15 impossible for the issuer to know whether the evidence would still be in the target search location,
16 Lowe's cell phone remained in the same location and condition it was in on the day of his
17 arrest—the same day that the information about his alleged criminal activities was provided. And
18 because some of S.M.'s statements tied the use of the phone to Lowe's alleged criminal activity,
19 there was a sufficient nexus between the alleged criminal conduct and the cell phone.

20 Finally, it is of no consequence that the phone was already in possession of law enforcement
21 before the warrant was issued. As Magistrate Judge Ferenbach accurately observed, the phone was
22 among Lowe's personal effects lawfully seized during his booking and jailing.[62] Lowe has not
23 identified any authority for his insinuation that the government's possession of the cell phone during

---

[60] Doc. 40-1 at ¶6-11.

[61] *Id*. at ¶12.

[62] *See* Doc. 63 (citing *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983) ("we have previously established that the inventory search constitutes a well-defined exception to the warrant requirement.")).

10

this time frame and under these circumstances was inappropriate.[63]  Lowe's objections to the Magistrate Judge's finding that the search warrant for the cell phone was supported by probable cause are overruled.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Magistrate Judge Ferenbach's Report and Recommendation **[Doc. 63] is Adopted**, and Lanalsikov Lowe's objections **[Doc. 72]** are overruled. It is furthered ordered that Lowe's motion to suppress evidence obtained on November 25, 2013, **[Doc. 38] is Denied**, Lowe's motion to suppress post-arrest statement **[Doc. 39] is Denied Without Prejudice**, and Lowe's motion to suppress evidence obtained from a cellular telephone **[Doc. 40] is Denied**.

DATED October 10, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE

---

[63] *See* Doc. 72 at 7.